# UNITED STATES DISTRICT COURT

for the

Eastern District of Missouri

In the Matter of the Search of

an Apple iPhone, black in color, with a dual lens camera, cracks on
the rear of the phone and no other particular identifiers visible on
the exterior of the phone, as depicted in Attachment A.

)
)
)
)
)
)

Case No.    4:22 MJ 6221 PLC

SIGNED AND SUBMITTED TO THE COURT FOR
FILING BY RELIABLE ELECTRONIC MEANS

## APPLICATION FOR A SEARCH WARRANT

I, _SA David Silverstrand_____, a federal law enforcement officer or an attorney for the government
request a search warrant and state under penalty of perjury that I have reason to believe that on the following property:

SEE ATTACHMENT A

located in the _____EASTERN_____ District of _____MISSOURI_____ , there is now concealed

SEE ATTACHMENT B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18:922(u) | Theft from a Federal Firearms License |

The application is based on these facts:

SEE ATTACHED AFFIDAVIT WHICH IS INCORPORATED HEREIN BY REFERENCE

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

I state under the penalty of perjury that the following is true and correct.

DAVID
SILVERSTRAND

Digitally signed by DAVID
SILVERSTRAND
Date: 2022.10.19 09:39:50 -05'00'

*Applicant's  signature*

Special Agent David Silverstrand, ATF

*Printed name and title*

Sworn to, attested to, and affirmed before me via reliable electronic means pursuant to Federal Rules of Criminal Procedure 4.1 and 41.

Date:    10/19/2022

*Patricia L. Cohen*

*Judge's signature*

City and state:    St. Louis, MO

Honorable Patricia L. Cohen, U.S. Magistrate Judge

*Printed name and title*

AUSA:    C. Ryan Finlen, #6305918IL

## ATTACHMENT A

The property to be searched is an Apple iPhone, black in color, with a dual lens camera and cracks on the rear of the phone. Other than the Apple Brand logo, the device has no other particular identifiers visible on the exterior of the phone (hereinafter "the Device"). The Device is pictured below:



The Device is currently located in a property storage container in a property storage facility at the St. Louis City Juvenile Detention Center in St. Louis, Missouri. The container in question contains property seized from Keshaun WHITE on or about October 15, 2022, to include the Device, incident to his arrest by SLMPD.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

1

## ATTACHMENT B

1.      All records on the Device described in Attachment A that relate to violations of Title 18, United States Code, Section 922(u) and involve Keshaun WHITE and other person known and unknown from September 1, 2022 to October 15, 2022, including:

    a.  Records, documents, information, and images, however maintained, relating to firearms, to include the theft, acquisition, sale, trading, disposal, use, or possession of firearms in any form

    b.  Lists of customers and related identifying information;

    c.  All information pertaining to entities or individuals including, but not limited to, names, addresses, telephone numbers and social media identifiers;

    d.  All photographs, video recordings, digital images, and negatives;

    e.  All information pertaining to geographical positioning of the device, wireless networks, geographical data embedded in pictures;

    f.  All information pertaining to incoming or outgoing telephone calls, missed telephone calls, text messages, or other communications;

    g.  All information pertaining to datebooks, calendars, appointments, or other scheduling records;

    h.  All information pertaining to any stored and/or unretrieved telephone numbers, voice messages, text messages, memorandums, writings, or other communications;

    i.  Any electronic records, documents, and materials, in whatever form and by whatever means such records, documents, or materials, their drafts or their modifications, may have been created or stored, including, but not limited to, any

hand-made form (such as writing or marking with any implement on any surface, directly or indirectly); any photographic form (such as microfilm, microfiche, prints, slides, negative, video recordings, motion pictures or photocopies); any mechanical form (such as photographic records, printing or typing); any electrical, electronic, or magnetic form to include internet search history and internet usage.

2.     Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| IN THE MATTER OF THE SEARCH OF | ) | |
| An Apple iPhone, black in color, with a dual | ) | No. 4:22 MJ 6221 PLC |
| lens camera, cracks on the rear of the phone | ) | |
| and no other particular identifiers visible on | ) | FILED UNDER SEAL |
| the exterior of the phone, as depicted in | ) | |
| Attachment A. | ) | SIGNED AND SUBMITTED TO THE COURT |
| | ) | FOR FILING BY RELIABLE ELECTRONIC MEANS |

**AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41**
**FOR A SEARCH WARRANT**

I, David Silverstrand, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property – an electronic device – described in Attachment A, which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.      I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), and have been since December 2013. Prior to being employed by ATF, I was a United States Border Patrol Agent beginning in October 2006. I am currently assigned to ATF's St. Louis Group IV in the Kansas City Field Division, and I am responsible for investigating violations of the federal firearms laws. I have conducted numerous investigations involving criminal firearm possession and use, thefts of firearms from Federal Firearms Licensees, and the illegal acquisition and distribution of firearms on the secondary market.

3.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended

1

to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 18, United States Code, Section 922(u) have been committed by juvenile Keshaun WHITE (B/M; DOB: XXXX/2007) and/or other persons known and unknown. There is also probable cause to search the information described in Attachment A for evidence of these crimes and contraband or fruits of these crimes, as described in Attachment B.

**LOCATION TO BE SEARCHED AND IDENTIFICATION OF THE DEVICE**

5.      The property to be searched is an Apple iPhone, black in color, with a dual lens camera and cracks on the rear of the phone. Other than the Apple Brand logo, the device has no other particular identifiers visible on the exterior of the phone (hereinafter "the Device"). The Device is pictured below:



The Device is currently located at in a property holding facility at the St. Louis City Juvenile Detention Center located at 3847 Enright Avenue in St. Louis, Missouri 63108.

2

6.     The applied-for warrant would authorize the forensic examination of the device for the purpose of identifying electronically stored data particularly described in Attachment B.

**TECHNICAL TERMS**

7.     Based on my training and experience, I use the following technical terms to convey the following meanings:

a.   Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device. A wireless telephone may have wireless connection capabilities such as Wi-Fi and Bluetooth.

b.   Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety

of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c.  Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d.  GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special

4

sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e.  PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication Devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data.  Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f.  IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control

5

a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

g. Internet: The internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the internet, connections between devices on the internet often cross state and international borders, even when the devices communicating with each other are in the same state.

8.     Based on my training, experience, and research, I know that the Device has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation Device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the Device.

## PROBABLE CAUSE

**September 17, 2022, FFL Burglary Involving a Stolen Kia and a Stolen Hyundai**

9.     On September 17, 2022, I received information that a burglary had occurred in the early morning hours of September 17, 2022, at Denny Dennis Sporting Goods (hereinafter "the Store"), a Federal Firearms Licensee (FFL) located in Fenton, Missouri, within the Eastern District of Missouri. Subsequent to the burglary, Store employees informed me that they conducted a complete inventory of their firearms and discovered a total of fifty-one (51) firearms were not accounted for.

10.     I reviewed surveillance video footage from the Store's security system and observed the following details:

a.  At approximately 3:10am, two (2) vehicles enter the Store's parking lot and individually pull the front of the vehicles up to the front doors of the Store. Based on my experience, I believe the driver of each vehicle was gauging the width of their individual vehicle to determine whether the vehicle would fit between two security pylons blocking the front doors of the Store. If one of the vehicles would have fit between the pylons, based on my experience and a recent trend amongst retail burglaries, I believe one of the vehicles would have been used to drive through the front doors of the Store in order to gain entry. Both vehicles eventually back away from the front doors of the Store and are seen driving toward the northeast side of the Store.

b.  At approximately 3:17am, three suspects are observed walking across the parking lot toward the front doors of the Store. One of the individuals can be seen carrying a large object with both hands while walking across the parking lot. At approximately 3:18am, the same three suspects are observed inside the Store and rushing toward the firearms section of the Store. Of note, evidence found inside the Store indicates the suspects used a large vehicle jack to break a sidelight window adjacent to the front doors of the Store to gain entry. A car jack was found just inside the Store where the window was broken and Store employees stated the vehicle jack was not an item associated to the Store. Based on my observations, I believe the individual referenced above was carrying the vehicle jack across the parking lot to use to break the Store's window. Also of note, the surveillance camera in the firearms section of the Store was not functioning properly and did not capture any footage of the individuals taking the firearms.

7

c. The three suspects observed in the surveillance video are described as follows:

  i. Black individual wearing grey sweatpants, a black hoodie and carrying a dark colored backpack with a white stripe down the middle;

  ii. Black individual, wearing black pants with a white stripe down the side, a green hoodie, and a purse strapped across his/her torso;

  iii. Black individual, wearing black pants, a black hoodie and carrying a grey open-top backpack.

d. At approximately 3:20am, the same three suspects are observed exiting the Store and running across the Store's parking lot towards where the 2 vehicles were last seen on camera.

e. At approximately 3:21am, the same three suspects are observed running back toward the front of the Store, re-enter the Store and rush toward the firearms section of the Store.

f. At approximately 3:22am, the same three suspects are observed exiting the Store and running across the parking lot towards where the 2 vehicles were last seen on camera. A short time later at approximately 3:22am, both cars can be seen leaving the parking lot at a high rate of speed and exit camera view.

g. The two vehicles appeared to be a blue mid-size sport-utility vehicle and a grey four-door sedan. I noted the front of the four-door sedan appeared to have physical front end damage, as though the front grill was bent inward toward the engine compartment.

11. I am aware of a recent trend amongst criminals and criminal organizations using stolen Hyundai vehicles and stolen Kia vehicles in furtherance of various criminal activities.

8

Likewise, I am aware of several recent FFL burglaries and attempted burglaries in the St. Louis metropolitan area in which the suspects have used stolen Hyundai vehicles and stolen Kia vehicles in the commission of the burglaries.

12.     Thus, on September 17, 2022, I contacted the St. Louis Metropolitan Police Department (SLMPD) Real Time Crime Center (RTCC) requesting they review whether any other burglaries had occurred in the early morning hours on September 17, 2022, and to review the stolen vehicle hot-sheet for vehicles that matched the description of vehicles used in the Store burglary. RTCC Detective Percich reported a blue 2017 Kia Sportage bearing Missouri license plate VD7 P0R was reported stolen sometime after 1:00am on September 17, 2022, in St. Louis City. A 2017 Kia Sportage is a mid-size SUV similar to the vehicle used during the burglary. RTCC queried local license plate readers and noted the same Kia Sportage was observed driving near St. Ange and Hickory Streets in St. Louis City at approximately 4:30am on September 17, 2022. I recognize this address to be in the Peabody Apartment Complex in St. Louis City. I know the Peabody Apartment Complex is a high-crime area with a history of assaults, shootings, homicides, stolen vehicles, and the recovery of several stolen vehicles.

13.     RTCC Detective Percich also advised a grey 2019 Hyundai Sonata bearing Missouri license plate JC4 Z0X was stolen sometime after midnight on September 17, 2022, in St. Louis City. A 2019 Hyundai Sonata is a 4-door sedan similar to the vehicle used during the Store burglary.

14.     On September 18, 2022, RTCC Detective Percich advised the aforementioned Kia Sportage was recovered by the Belleville Police Department in a parking garage in Belleville, Illinois. Belleville Police Department towed the vehicle to a vehicle storage facility after recovering the vehicle.

9

**Consent Search of the Stolen Vehicles and Recovery of Evidence**

15.     On September 19, 2022, I contacted the registered owner of the Kia Sportage and requested consent to search the vehicle for evidence of the FFL burglary. The owner granted consent to search the vehicle. On the same day, I requested St. Louis County Police Department (SLCPD) Crime Lab Detectives to process the vehicle for potential physical and forensic evidence. SLCPD Crime Lab located a firearm under one of the seats of the vehicle. The firearm is identified as a Walther, model PPS M2, 9mm caliber pistol bearing serial number BC 1217. The firearm had Denny Dennis Sporting Goods Store stickers on it. This firearm was reported as stolen by Store employees in the burglary that occurred on September 17, 2022.

16.     On September 19, 2022, RTCC Detective Percich advised the aforementioned Hyundai Sonata was recovered by SLMPD in the Peabody Apartment Complex. SLMPD released the vehicle directly to the registered owner without having the vehicle processed by crime lab technicians. I contacted the registered owner of the Sonata and requested consent to search the vehicle for physical evidence. The owner granted consent to search the vehicle. On September 20, 2022, I met with the owner at his/her residence which is where the vehicle was stolen from on September 17, 2022. I observed the front of the Sonata had physical front end damage. The front grill of the Sonata was bent inward toward the engine compartment. The owner indicated this damaged occurred prior to the Sonata being stolen. The front-end damage to the vehicle is identical to the front-end damage observed on the grey four-door sedan suspect vehicle in the Store's surveillance video.

**Connection between Lamarc GARRETT and the FFL Burglary**

17.     On September 20, 2022, I received information from SLMPD Detective Tom Scanlon. Det. Scanlon advised a confidential informant (CI) contacted him regarding an

Instagram posting the CI observed from an individual the CI knows to be juvenile C.H. The CI provided Det. Scanlon with a picture the CI took of the Instagram post depicting approximately fourteen (14) firearms laying on what appears to be a bed. I compared the firearms in the picture with the list of firearms stolen from the Store on September 17, 2022. I noted the make and model of each individual firearm depicted in the picture was represented on the list of firearms stolen from the Store on September 17, 2022. Det. Scanlon advised he knew C.H. to live at 1431 Park Avenue inside the Peabody Apartment Complex in St. Louis City. Det. Scanlon further advised he knew C.H. was currently under investigation by SLMPD Homicide Detectives for a murder that occurred near C.H.'s address, 1431 Park Avenue in the Peabody Apartment Complex.

18.     On September 22, 2022, I was notified that a firearm stolen from the Store on September 17, 2022, was recovered by SLMPD. SLMPD officers were dispatched to a call for "shots fired" relative to a male and female fighting in the street near 18th Street and Choteau Avenue in St. Louis City. I know 18th Street and Choteau Avenue is directly adjacent to the Peabody Apartment Complex. Subsequent to being dispatched, SLMPD officers encountered an individual matching the description of the male suspect in the call for service. The individual, who was later identified as Lamarc GARRETT, was walking northbound on 14th Street near a public transportation transit station located at 401 South 14th Street in St. Louis City. SLMPD attempted to contact GARRETT, however he began running southbound on 14th Street towards Choteau Avenue. Of note, the majority of 14th Street south of 401 South 14th Street and north of Choteau Avenue is a bridge with other city streets and a rail yard beneath the bridge. Officers chased GARRETT southbound across the 14th Street bridge. While chasing GARRETT, SLMPD Officer Miskovic observed GARRETT retrieve a firearm from his bag and drop it over the side

11

of the bridge to the pavement below. A short time later, SLMPD officers took GARRETT into custody. SLMPD officers responded to the area below the 14th Street bridge near where Officer Miskovic saw GARRETT drop the firearm and located a pistol identified as a Shadow Systems, model DR920, 9mm pistol bearing serial number SSX 013056. This firearm was reported as stolen by Store employees in the burglary that occurred on September 17, 2022.

19.     I reviewed police computer databases and discovered that GARRETT lives at 1549 Castle Lane in St. Louis, Missouri. I know this address is located within the Peabody Apartment Complex in St. Louis City.

**Connections Between Stolen Hyundai, Stolen Firearms, GARRETT and REED**

20.     On October 3, 2022, I received information from ATF Task Force Officer (TFO) Nicole Weite. Relative to the investigation into the FFL burglary of the Store on September 17, 2022, TFO Weite had been reviewing surveillance camera footage from inside the Peabody Apartment Complex. TFO Weite located a camera with a view of 1549 Castle Lane and knew that address to be Lamarc GARRETT's residence. On video footage from September 16, 2022, TFO Weite observed a black Hyundai Elantra bearing Illinois license plate DN 42694 arrive at 1549 Castle Lane at approximately 9:43pm. Vehicle registration records revealed that Hyundai Elantra was reported stolen on September 11, 2022, from Belleville, Illinois. TFO Weite observed three individuals exit the Elantra, one of which is wearing dark colored pants with a white stripe down the side and a green hoodie. TFO Weite recognized the clothing matched the clothing description of one of the three suspects who entered and burglarized the Store on September 17, 2022. The time stamp on the surveillance video is approximately five and one-half hours before the burglary occurs in the early morning hours of September 17, 2022. The occupants of the Elantra have a brief conversation with an individual who exits GARRETT's

residence before re-entering the stolen Elantra. The Elantra then drives and parks near 1431 Park Avenue inside the Peabody Apartment Complex. TFO Weite recognized that area is near the residence of C.H.

21.     TFO Weite further queried law enforcement records on the aforementioned stolen Hyundai Elantra and discovered the following information: on September 17, 2022, at approximately 5:00pm, the stolen Hyundai Elantra was reported to SLMPD as having been involved in a vehicle accident and assault involving a motorcycle. Witnesses reported a female driver swerved and intentionally hit a motorcycle while travelling southbound on Tucker Avenue near Spruce Street in St. Louis City. The rider of the motorcycle was thrown off and suffered various injuries. The Hyundai Elantra fled the scene of the accident. A short time after this accident and assault, the stolen Hyundai Elantra was recovered by SLMPD abandoned and still running near the intersection of Rutger Lane and Dillon Drive inside the Peabody Apartment Complex. The vehicle had sustained front end damage from the accident and was towed by SLMPD. The vehicle was ultimately towed to a repair shop in O'Fallon, Illinois.

22.     On October 4, 2022, I contacted the husband of the registered owner of the stolen Hyundai Elantra. I requested consent to search the vehicle for physical evidence relating to the burglary of the Store. The husband contacted the registered owner on my behalf and granted consent. Later that day, I searched the Hyundai Elantra and located a gas station receipt for a food stamp purchase underneath the driver's seat. I contacted United States Department of Agriculture Office of the Inspector General Special Agent Mack Walker regarding obtaining account record information of the Electronic Benefits Transfer (EBT) account. SA Walker advised the account was registered to Raquel REED. Investigative research revealed REED recently had a residence inside the Peabody Apartment Complex. Investigative research also

13

revealed REED was the purchaser of a firearm seized by SLMPD relative to a trespassing investigation that occurred in the Peabody Apartment Complex on July 29, 2021. The firearm REED had purchased was recovered from juvenile D.S., a documented gang member within the Peabody Apartment Complex.

23.     On October 7, 2022, I was notified that a firearm stolen from the Store on September 17, 2022, was recovered by SLMPD. On October 7, 2022, SLMPD was dispatched to Kipp High School in St. Louis, Missouri regarding a student in possession of a firearm. SLMPD Officers responded to the school and located juvenile J.F. Inside his/her backpack, J.F. was in possession of a CMMG, model Banshee, 9mm caliber AR style pistol bearing serial number TTB 05499. This firearm was reported as stolen by Store employees in the burglary that occurred on September 17, 2022. J.F. was arrested and transported to the Juvenile Detention Center in St. Louis, Missouri. J.F.'s mother responded to the Juvenile Detention Center. J.F.'s mother was identified as Raquel REED. My review of information stored in police computer databases revealed that J.F. is associated with an address on Hickory Lane, inside the Peabody Apartment Complex.

### Identification of Keshaun WHITE

24.     Relative to the burglary of the Store that occurred on September 17, 2022, in addition to several other FFL and retail burglaries that have recently occurred in the St. Louis metropolitan area, St. Louis County Police Department (SLCPD) Detective Mike Byrne obtained a search warrant for historical cellular tower log information for cellular telephone service providers. Det. Byrne limited the information obtained through the warrant to the specific dates and narrow times of burglary incidents under investigation. Detective Byrne also included the narrow time frames for the thefts of both the aforementioned Kia Sportage and Hyundai Sonata

used in the burglary of the Store on September 17, 2022. Information obtained from the search warrant indicated a device assigned phone number 314-818-4611 accessed or otherwise connected to cellular towers that serviced areas during the narrow time frames for the theft of the suspect Hyundai Sonata and for the burglary of the Store. Of note, the location of the Store and the location where the Hyundai Sonata was stolen is approximately 14 miles apart. Furthermore, information obtained from Det. Byrne's search warrant indicated that during narrow time frames, a device assigned the same phone number above accessed or connected to cellular towers that serviced areas for another FFL burglary that occurred on August 20, 2022, and another attempted FFL burglary on August 24, 2022. I conducted a publicly available search through CashApp for the phone number 314-818-4611 and learned that the phone number 314-818-4611 is associated to an account on the mobile payment service application "CashApp" to account name "Wopo Keshaun" and CashApp account user handle "$wopoleeskie".

25.    I received additional information from SLMPD Det. Scanlon who stated his CI identified the Instagram account with the handle "woporeaper" as belonging to Keshaun WHITE. On October 17, 2022, I searched Instagram for an account under the handle "woporeaper" and located an account with a profile picture depicting two individuals standing on a sidewalk. One of the individuals is wearing a balaclava type mask and a hooded sweatshirt and is holding what appears to be an AR type pistol with a drum type magazine. The Instagram account for "woporeaper" is set to private, however, there is still information that is unrestricted and open to public viewing that displays the words "Wopokeshaun" and "leeskie." I believe the information visible on the page for "woporeaper" corroborates the information provided by Det. Scanlon's CI that the Instagram account for "woporeaper" belongs to Keshaun WHITE. Based on the information above, I believe the device associated with phone number 314-818-4611 is

associated with Keshaun WHITE. As such, I believe Keshaun WHITE was involved in the theft of the suspect Hyundai Sonata on September 17, 2022, and the burglary of the Store on September 17, 2022.

26.     Det. Scanlon advised Keshaun WHITE is currently under investigation by SLMPD detectives for an assault 1st investigation that occurred on May 1, 2022. Keshaun WHITE and C.H. (referenced above), in addition to other individuals yet to be identified, are implicated in shooting a victim in the face inside the Peabody Apartment Complex. SLMPD Det. Craig Sayer investigated this shooting. Det. Sayer determined the other unidentified suspects who were with Keshaun WHITE and C.H. at the time of the shooting were observed soon after the shooting to run and enter C.H.'s residence and Lamarc GARRETT's residence. Det. Sayer conducted search warrants at both C.H.'s residence and GARRETT's residence subsequent to the shooting/assault investigation. Two guns located in C.H.'s residence were linked to shell casings recovered from the shooting in question through National Integrated Ballistic Information Network (NIBIN) correlations.

27.     On October 16, 2022, SLMPD Det. Scanlon informed me that Keshaun WHITE was arrested as the driver of a stolen Hyundai Elantra. Det. Scanlon provided me with the following details: On October 15, 2022, SLMPD Detectives assigned to the Anti-Crime Task Force located a 2017 Hyundai Elantra they determined to be stolen. Detectives attempted to conduct a traffic stop on the vehicle due to its stolen status, however the vehicle failed to yield. Detectives were able to successfully deploy a controlled tire deflation device, however, the vehicle continued to flee. The vehicle eventually yielded to law enforcement and Keshaun WHITE was taken into custody without further incident. Keshaun WHITE was also arrested for

an outstanding warrant related to the shooting investigation referenced above and for being a runaway juvenile from the Department of Youth Services in St. Louis, Missouri.

**WHITE's Possession of the Device and Probable Cause to Search the Device**

28.     Incident to Keshaun WHITE's October 15, 2022, arrest, detectives located the Device on Keshaun WHITE's person. The Device was logged into Keshaun WHITE's property at the St. Louis City Juvenile Detention Center.

29.     Based on my training and experience, I know that individuals who live in an apartment complex often associate with other people that live in the same apartment complex. Furthermore, I know that street gangs/criminal organizations often claim an apartment complex as being part of that gang's "turf" or area of control. I know that ATF and SLMPD is currently and has actively investigated several individuals who currently live/have lived in the Peabody Apartment Complex and claimed association to gangs associated to the Peabody Apartment Complex. I have observed numerous social media posts (unrestricted posts and available for public viewing) depicting several different individuals I know to live in the Peabody Apartment Complex. Many of these individuals are juveniles and are frequently carrying and displaying firearms to include handguns on social media. These social media posts include posts from Facebook, Instagram and YouTube. I know that individuals involved in criminal activity regularly use social media as a way to communicate with other criminal participants/co-conspirators. I know that people who use social media platforms to communicate regularly do so on cellular phones.

30.     While conducting investigative research into gangs associated with the Peabody Apartment Complex, I have recognized locations in several social media posts to be locations inside the Peabody Apartment Complex and depicting documented gang members associated to

the Peabody Apartment Complex carrying and displaying firearms. Furthermore, I have observed several individuals in many different social media posts either inside the Peabody Apartment Complex or with direct associations to individuals who live in the Peabody Apartment Complex referencing the gang moniker "Wopo." The SLMPD Intelligence Unit has documentation the moniker "Wopo" is a tribute to an individual who was killed in recent years with direct association to the Peabody Apartment Complex. As a result, I believe that individuals who incorporate some form of "Wopo" into social media usernames or handles are directly or indirectly associated to the Peabody Apartment Complex.

31.     The SLMPD Intelligence Unit has extensive documentation regarding ongoing gang activity and gang members claiming territory in and around the Peabody Apartment Complex. I know Keshaun WHITE has been associated to an address inside the Peabody Apartment Complex in the past. Based on this investigation, I believe the suspects who burglarized the Store on September 17, 2022, to include Keshaun WHITE, live within the Peabody Apartment Complex and/or are directly associated with individuals who live in the Peabody Apartment Complex.

32.     I know that individuals involved in trafficking stolen firearms will often use social media applications on cellular phones to communicate with perspective purchasers for their stolen firearms. Likewise, I know that individuals involved in trafficking stolen firearms will often post guns for sale on various gun-trading websites. I know that gun-trading websites often monitor communications between site participants whether one is a perspective buyer or seller. As such, I know many gun-trading site participants opt to ultimately communicate directly with prospective buyers and sellers by providing direct contact information either through phone numbers or social media handles. I know that individuals involved in trafficking stolen firearms

will often attempt to dispose of the stolen firearms quickly in order to conceal or insulate themselves from being implicated in the theft or distribution of the stolen firearms. However, records of these sales and negotiations are often stored for long periods of time in the electronic memory of a cellular phone.

33.     Based on my training, experience and the following facts, I believe Keshaun WHITE was directly involved in the execution of the burglary of the Store on September 17, 2022:

     a.   The fact Keshaun WHITE is a direct associate of C.H. who posted a picture approximately 3 days after the burglary of the Store of guns I believe were stolen from the Store on September 17, 2022;

     b.   The fact Keshaun WHITE has been associated as a resident of an address inside the Peabody Apartment complex in the past;

     c.   The fact a phone number associated to Keshaun WHITE was determined to be in areas serviced by cellular phone towers at:

          i.    The time of the burglary of the Store on September 17, 2022;

          ii.   The time of the theft of the Hyundai Sonata used in the burglary of the Store;

          iii.  The time of an additional FFL burglary on August 20, 2022;

          iv.   The time of an additional attempted FFL burglary on August 24, 2022.

34.     Based on my training and experience, I know that cellular telephones are capable of storing location data on the device. Smart phones are capable of storing Global Position Satellite (GPS) data, wireless hot spot information, and geographical data embedded in pictures. This information can be obtained during the physical extraction of a cellular device and can be

used to determine historical geographical data of the device. A physical extraction is a complete and comprehensive data extraction of a cellular device and is accomplished through the use of device acquisition tools.

35.     I know that ATF has recently been involved with investigating several burglaries of Federal Firearms Licensees. These investigations have shown that individuals involved in selling or otherwise disposing of stolen firearms do so by communicating with prospective purchasers online, through social media, and by direct communication most often using cellular phones.

36.     The Device is currently in the lawful possession of the St. Louis Juvenile Detention Center. It came into the Juvenile Detention Center's possession as it was seized incident to Keshaun WHITE's arrest. I seek this warrant out of an abundance of caution to be certain that an examination of the Device will comply with the Fourth Amendment and other applicable laws.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

37.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.   This information can sometimes be recovered with forensics tools.

38.     *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when.  There is probable cause to believe that this forensic electronic evidence might be on the Device because:

20

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b. Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process.  Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators.  Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves.  Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

39.     *Nature of examination.*   Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Device

21

consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the Device to human inspection in order to determine whether it is evidence described by the warrant.

## CONCLUSION

40.     I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Device described in Attachment A to seek the items described in Attachment B.

41.     Because this warrant seeks only permission to examine a Device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

[REMAINDER OF PAGE LEFT INTENTIONALLY BLANK]

42.     It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and search warrant. I believe that sealing this document is necessary because the warrant is relevant to an ongoing investigation into the criminal organizations as not all of the targets of this investigation will be searched at this time. Based upon my training and experience, I have learned that online criminals actively search for criminal affidavits and search warrants via the internet, and disseminate them to other online criminals as they deem appropriate, *i.e.*, post them publicly online through the carding forums. Premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness.

I state under the penalty of perjury that the foregoing is true and correct.

10/19/2022

DAVID SILVERSTRAND
Digitally signed by DAVID SILVERSTRAND
Date: 2022.10.19 09:39:18 -05'00'

_____
DATE

DAVID SILVERSTRAND
Special Agent
Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF)

Subscribed and sworn to before me by reliable electronic means, in accordance with Federal Rule of Criminal Procedure 4.1 on October 19 , 2022.

*Patricia L. Cohen*
_____
HONORABLE PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE
Eastern District of Missouri

## ATTACHMENT A

The property to be searched is an Apple iPhone, black in color, with a dual lens camera and cracks on the rear of the phone. Other than the Apple Brand logo, the device has no other particular identifiers visible on the exterior of the phone (hereinafter "the Device"). The Device is pictured below:



The Device is currently located in a property storage container in a property storage facility at the St. Louis City Juvenile Detention Center in St. Louis, Missouri. The container in question contains property seized from Keshaun WHITE on or about October 15, 2022, to include the Device, incident to his arrest by SLMPD.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

1

## ATTACHMENT B

1.      All records on the Device described in Attachment A that relate to violations of Title 18, United States Code, Section 922(u) and involve Keshaun WHITE and other person known and unknown from September 1, 2022 to October 15, 2022, including:

    a.  Records, documents, information, and images, however maintained, relating to firearms, to include the theft, acquisition, sale, trading, disposal, use, or possession of firearms in any form

    b.  Lists of customers and related identifying information;

    c.  All information pertaining to entities or individuals including, but not limited to, names, addresses, telephone numbers and social media identifiers;

    d.  All photographs, video recordings, digital images, and negatives;

    e.  All information pertaining to geographical positioning of the device, wireless networks, geographical data embedded in pictures;

    f.  All information pertaining to incoming or outgoing telephone calls, missed telephone calls, text messages, or other communications;

    g.  All information pertaining to datebooks, calendars, appointments, or other scheduling records;

    h.  All information pertaining to any stored and/or unretrieved telephone numbers, voice messages, text messages, memorandums, writings, or other communications;

    i.  Any electronic records, documents, and materials, in whatever form and by whatever means such records, documents, or materials, their drafts or their modifications, may have been created or stored, including, but not limited to, any

hand-made form (such as writing or marking with any implement on any surface, directly or indirectly); any photographic form (such as microfilm, microfiche, prints, slides, negative, video recordings, motion pictures or photocopies); any mechanical form (such as photographic records, printing or typing); any electrical, electronic, or magnetic form to include internet search history and internet usage.

2.      Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

2